USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/12/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
In Re: Rafael Lozada                                          :   **OPINION AND ORDER**
                                                              :   **AFFIRMING DENIAL OF**
                                                              :   **DISCHARGE**
                                                              :
                                                              :   18 Civ. 11643 (AKH)
                                                              :
------------------------------------------------------------- X

**ALVIN K. HELLERSTEIN, U.S.D.J.:**

This case presents the question whether, and to what extent, religiously-motivated contributions figure into undue hardship analysis for student loan discharge. Debtor Rafael Lozada ("Lozada" or "appellant") appeals the November 16, 2018 memorandum decision and order of the bankruptcy court, denying discharge of his student loan debt. Lozada argues that the bankruptcy court failed to properly consider his religious practice of tithing in determining whether excepting his student debt from discharge would impose an undue hardship, pursuant to 11 U.S.C. § 523(a)(8). The order of the bankruptcy court is affirmed.

**Factual Background**

Many of the relevant facts were stipulated by the parties. The bankruptcy court also accepted testimony and documentary evidence at a trial held on August 21, 2018. While finding Lozada's testimony "earnest and credible," the bankruptcy court concluded that his testimony did not significantly alter the stipulated facts, "seemingly fatal to his claim of undue hardship." The following is consistent with the bankruptcy court's findings.

Appellant is a Connecticut resident. Appellee Educational Management Corporation ("appellee" or "ECMC") is a Minnesota not-for-profit corporation and a federal student loan guarantor in the Federal Family Education Loan Program, which holds an interest in the unpaid student loan.

At the time of the bankruptcy court's fact-finding, Lozada was 67 years old, married to a retired school teacher, and without dependents. He was not working, and his sole source of income was his $1,296 Social Security benefit. His wife receives approximately $4,685 in Social Security and pension income per month. Together with his wife, Lozada receives a net income of at least $5,942 per month.

Lozada holds a Bachelor of Arts degree from City College of New York and a Juris Doctorate from Brooklyn Law School, which he entered at the age of 38. Following law school, Lozada never passed any bar exam and has never been admitted to practice law. After failing his single attempt at the bar exam, Lozada did not pursue employment within the legal profession. At the trial, he testified that he "already had a career" and so "determined [to] just keep on doing what [he] was doing." He testified that he "saw a future" in his non-profit work and believed his income at the time was "fair."

Instead of pursuing a career in the legal profession, Lozada held positions in the social service and non-profit sectors. He has earned as much as $75,000 per year and had an annual salary of $70,000 as recently as 2013. Lozada is able to use a computer to perform tasks, including research, email, and document creation. Lozada is able to drive an automobile.

At trial, a vocational expert called by appellee, Jesse Ogren ("Ogren"), testified on Lozada's employment prospects, and taking into account his physical limitations, opined that Lozada should be able to find employment at a position offering a salary of at least $40,000 per

year. Ogren testified that Lozada's past work was "highly skilled." Ogren also testified that he could not recall placing a candidate of Lozada's age.

Lozada has been unemployed since 2014, and he stipulated that he had not sought employment since January 2015. At trial, he testified that he had searched for employment during most of 2015. Lozada testified that he confined his job search to the non-profit sector, though he also testified that he had applied to a retail position at Costco.

During 2015, Lozada and his wife invested $90,000 of her retirement funds into starting a daycare business, which failed. Lozada testified that the purpose of the business was to generate income in light of his failure to secure other employment.

Lozada had consistently made loan payments from 1990 through 1994, when he was laid off from his New York City Board of Education position. In 2002, Lozada consolidated his student loans with loans borrowed through the Parent Plus Loan program for the benefit of his son. Lozada had obtained deferments and forbearances for a total of 80 months during the period between April 2005 and May 2017, and he had obtained deferments and forbearances for all but three months between July 2013 and May 2017. Lozada has not made a student loan payment since 2015. The parties stipulated that, as of July 24, 2018, the outstanding balance on Lozada's loan was approximately $337,980.04, with interest accruing at a rate of 8.25 percent per year.

Lozada and his wife regularly make religious and charitable contributions, which totaled $23,510 in 2016, $21,544 in 2015, $21,866 in 2014, $24,783 in 2013, and $12,678 in 2012. Collectively, Lozada and his wife have donated more than $100,000 in the five years prior to his bankruptcy. The parties have stipulated that Lozada refuses to reduce his level of charitable contributions, even if such a reduction would allow him to repay the ECMC loan to

3

some extent. Lozada testified that contributing ten percent of his income is his belief and that he believes "that's what the Bible says."[1] He also testified that he gives offerings that exceed ten percent.

Lozada and his wife have received the following tax refunds: $4,609 for 2016; $5,037 for 2014; $3,852 for 2013; and $2,676 for 2012, totaling $16,174, no part of which were used to repay his ECMC loan. Lozada also inherited $30,000 from his mother in 2015 and did not use any portion of the inheritance to repay his ECMC loan.

The parties stipulated that Lozada is eligible to enter the William D. Ford Direct Loan Consolidation Program (the "Ford Program") in order to achieve greater flexibility in repaying his unpaid student loan. Plaintiff's monthly payment under the Income Contingent Repayment Program would be $826.15 for 300 months. Lozada has not entered into this program.

At trial, Lozada estimated that his monthly household expenses total $4,499, consisting of the following:

| | |
|---|---|
| Rent | $2500 |
| Electric | $130 |
| Gas | $40 |
| Water | $15 |
| Cable | $100 |
| Cellphone | $100 |
| Food and Supplies | $500 |
| Clothing and Laundry | $100 |
| Personal Care | $100 |
| Medical Out of Pocket | $100 |
| Transportation | $200 |
| Entertainment | $100 |

---

[1] The record appears silent on whether Lozada can continue to receive services from his church, independent of whether he tithes. *Cf. In re Lynn*, 168 B.R. 693, 700 (Bankr. D. Ariz. 1994) (debtor fails to meet burden on tithing issue where, despite a "strong commitment to continue to tithe" and history of tithing, "her church permits her to cease tithing under certain circumstances, such as her impoverishment.").

4

>           Car Loan                    $314
>           Car Insurance               $200

Lozada testifies that he suffers from a number of health conditions, including diabetes, dry eyes, and rotator cuff tears. Lozada did not substantiate his health conditions with medical reports or expert testimony on their potential occupational impact. Lozada also testified that his wife suffered from a number of health issues but offered no other evidence on the type or level of care that those conditions require.

At trial, Lozada testified that he moved from the Bronx, where he paid $867 per month in rent, to Stamford, Connecticut, where he pays $2,500 per month. He testified that one consideration for the move was his wife's health conditions and limited mobility. He also testified that he chose his building in part because friends from his church also lived there. Lozada testified that he regularly eats out at restaurants. He also testified that he rented an apartment in Florida in 2016 and 2017 for $1,100 per month. Lozada has also taken multiple trips to Puerto Rico to visit his father, and he took a vacation in 2014. Lozada's bank statements reflect a number of payments to his adult children, and he pays his granddaughter a weekly allowance.

## Procedural History

Lozada filed for relief under Chapter 7 of the Bankruptcy Code on June 20, 2017, and he received a general discharge on September 19, 2017. Lozada subsequently filed an adversarial proceeding to discharge his student loan, pursuant to pursuant to 11 U.S.C. § 523(a)(8).

Following a trial held on August 21, 2018, the bankruptcy court denied Lozada's request for discharge. Analyzing Lozada's circumstances under the test adopted in *In re Brunner* ("*Brunner*"), the district court concluded that appellant failed to meet each of the three prongs. 46 B.R. 752, 756 (S.D.N.Y. 1985). Its order issued November 16, 2018, and final judgment issued November 27, 2018.

In applying the *Brunner* factors, the bankruptcy court considered Lozada's practice of contributing 10 percent of his income to his church and his practice of giving additional amounts to charity upon a particular need or request. The bankruptcy court evaluated, as a threshold matter, whether to include Lozada's religious and charitable donations in assessing whether his expenses were reasonable. The bankruptcy court declined to adopt a uniform rule of application with respect to the treatment of religious expenses.

Instead, the bankruptcy court evaluated whether Lozada's religious expenses, in light of the amount of his donations and history, was a reasonably necessary expenditure. The bankruptcy court found that, given his circumstances, his expenditures on religious donations, among other expenses, were excessive.

## Discussion

### A. Standard of Review

The District Court has jurisdiction to hear this bankruptcy appeal pursuant to 28 U.S.C. § 158(a)(1). District Court review of the bankruptcy court's findings of fact is for clear error, and review of legal conclusions is *de novo*. *In re Brunner*, 46 B.R. at 756. Whether not discharging a debtor's student would impose an "undue hardship" under 11 U.S.C. § 523(a)(8)

requires a conclusion regarding the legal effect of the bankruptcy court's findings, and is thus properly subject to this Court's review. *Brunner*, 831 F.2d at 396.

### B. Discharge Framework

"[B]ecause student loans are generally unsecured and recent graduates often have few or no assets, these debtors have an incentive to try to discharge their educational loans in bankruptcy. If successful, they can then enjoy the higher earning power the loans have made possible without the financial burden that repayment entails." *In re Renshaw*, 222 F.3d 82, 86–87 (2d Cir. 2000). Congress enacted 11 U.S.C. § 523(a)(8) in light of "evidence of an increasing abuse of the bankruptcy process that threatened the viability of educational loan programs and harm to future students as well as taxpayers." *Id.*; *see also In re Cox*, 338 F.3d 1238, 1243 (11th Cir. 2003) ("Considering the evolution of § 523(a)(8), it is clear that Congress intended to make it difficult for debtors to obtain a discharge of their student loan indebtedness.").

Section 523 provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . .

(8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for—

(A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or

(ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or

7

> **(B)** any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual;

"Once the threshold showing has been made, the burden shifts to the debtor to prove by a preponderance of the evidence that excepting the student loan debt from discharge will cause the debtor and her dependents 'undue hardship.'" *In re Savage*, 311 B.R. 835, 839 (B.A.P. 1st Cir. 2004) (citing *Grogan v. Garner*, 498 U.S. 279, 287 (1991)).

In *Brunner v. New York State Higher Educ. Servs. Corp.*, the Second Circuit adopted the following three-part test to show that he would face undue hardship, should his student loans not be discharged:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

831 F.2d 395, 396 (2d Cir. 1987).

### C. Appropriate Treatment of Religious and Charitable Donations

Lozada bases his appeal primarily on the contention that the bankruptcy court failed to consider his religious practice of tithing, in violation of his statutory and constitutional rights. "Through the Religious Liberty and Charitable Donation Protection Act of 1998 (the "RLCDPA"), Congress amended several sections of the Bankruptcy Code to exclude 'charitable contributions' totaling less than fifteen percent of the debtor's gross annual income from consideration by the bankruptcy courts for various purposes," but "§ 523(a)(8) was not one of the

8

Code sections amended by Congress." *In re Savage*, 311 B.R. at 842 (analyzing Pub. L. No. 105-183, 112 Stat. 517); *In re Ritchie*, 254 B.R. 913, 920-21 (Bankr. D. Idaho 2000) ("The lack of amendment to Section 523(a)(8) declaring charitable contributions to be an appropriate expense while at the same time Congress deleted the seven year provision of former Section 523(a)(8)[2] and amended other provisions of the Code to accommodate charitable giving persuades the Court that Congress did not intend further changes to the Section 523(a)(8) undue hardship analysis.").

"[T]here is a split of authority as to whether Congress intended religious and charitable donations to be permissible expenses in determining undue hardship under § 523(a)(8)." *In re Savage*, 311 B.R. at 842. Various courts have adopted a number of different approaches to determining whether religious and charitable expenses may be considered as reasonable expenses.

A number of courts have concluded that religious and charitable gifts are per se excluded from any undue hardship analysis. *See, e.g., In re Ritchie*, 254 B.R. at 919 (excluding religious and charitable expenses as proper expenses under § 523(a)(8) as outside the scope of RLCDPA); *In re McLeroy*, 250 B.R. 872, 880 (N.D. Tex. 2000) (based on textual analysis, "the RLCDPA has no application to 11 U.S.C. § 523(a)(8), and . . . debtors are not entitled under the Act to automatically refer to their tithing practices as an appropriate expense under the undue hardship test of *Brunner*."); *see also In re Lynch*, 299 B.R. 62, 75 (Bankr. S.D.N.Y. 2003)

---

[2] Pub. L. No. 105-244, 112 Stat. 1581. Prior to this 1998 amendment, the former § 523(a)(8) had provided for discharge of student loans that had become due seven or more years prior to the filing of the bankruptcy petition. *See In re Ritchie*, 254 B.R. at 921.

(finding federal income tax debt not dischargeable where $20,000 donation was optional and therefore not a necessary expense).

Other courts have conferred upon § 523(a)(8) the same treatment as other sections of the Bankruptcy Code, in which Congress has explicitly provided for the treatment of charitable and religious gifts. *See, e.g., In re Lebovits*, 223 B.R. 265, 273 (Bankr. E.D.N.Y. 1998) (concluding, without discussion of the statutory language, debtor's $60.00 per month tithing was covered by and within the 15 percent permissible threshold of RLCDPA); *In re Durrani*, 311 B.R. 496, 504 (Bankr. N.D. Ill. 2004) (applying the 11 U.S.C. § 1125(b)(2) disposable income standard to 11 U.S.C. § 523(a)(8)), *aff'd sub nom. Educ. Credit Mgmt. Corp. v. Durrani*, 320 B.R. 357 (N.D. Ill. 2005).

A third set of cases, observing that Congress has mandated neither the inclusion nor the exclusion of charitable or religious gifts from § 523(a)(8)'s undue hardship analysis, apply a context-specific assessment of the expense's reasonableness. *See, e.g., In re Meling*, 263 B.R. 275, 279 (Bankr. N.D. Iowa 2001), *aff'd sub nom. U.S. Dep't of Educ. v. Meling*, No. C01-2027 (MJM), 2002 WL 32107248 (N.D. Iowa Jan. 22, 2002) (holding that under debtor's personal circumstances, $100 monthly tithe was a reasonable expense); *In re Cline*, 248 B.R. 347, 351 (B.A.P. 8th Cir. 2000) (holding that bankruptcy court's allowance of $25 per month in charitable contributions, under debtor's circumstances, was not clear error); *In re McLaney*, 375 B.R. 666, 681 (M.D. Ala. 2007) ([T]his court agrees that tithing is not a per se allowable expense because the RLCDPA made no changes to § 523(a)(8) and nothing in § 523(a)(8) provides for it. By the same token, a per se exclusion of tithing, such as that applied by *In re Ritchie*, would also effectively amend § 523(a)(8) when Congress made no such alteration."). *See also In re Savage*,

311 B.R. at 842 (suggesting, in dicta, that church donations may be analyzed under a totality of circumstances).

Courts have also declined to consider religious and charitable giving when the donations were *de minimis*. *See, e.g., Wegrzyniak v. United States et. al. (In re Wegrzyniak)*, 241 B.R. 689, 694 n.4 (Bankr. D. Idaho 1999); *In re Robinson*, No. 00-82044, 2002 WL 32001246, at *3 (Bankr. C.D. Ill. Oct. 22, 2002); *see also In re Ritchie*, 254 B.R. at 920 (characterizing *In re Lebovits*, 223 B.R. at 273 as an example of a *de minimis* analysis). Lozada's payments are certainly not de minimis, and I adopt the reasoning of *In re Ritchie* in concluding that the statutory framework does not support a *de minimis* carveout.

In light of this statutory framework, Lozada's reference to 11 U.S.C. § 707(b) is unavailing. This section is limited in scope to describing and limiting the rights of the trustee and others to dismiss a case. This section plainly does not apply to the circumstances of this case, or circumscribe a court's analysis under § 523(a)(8).

The bankruptcy court had applied a context-specific analysis to Lozada's donations. Reviewing its legal conclusion *de novo*, I find that the bankruptcy court did not err in its application. Although the bankruptcy court found Lozada's commitment to charity laudable, it concluded that "when [Lozada] elects to tithe rather than pay his nondischargeable debt, he is making donations using someone else's money." Because the bankruptcy court correctly concluded that Congress has mandated neither inclusion nor exclusion of charitable and religious donations from the scope of the § 523(a)(8) analysis, and that Lozada's expenses were unreasonable, was not required to list them in its evaluation of the *Brunner* factors.

### D. The Religious Freedom Restoration Act and First Amendment

Lozada also argues for the first time on appeal that § 523(a)(8), as applied to his case, violate both the Religious Freedom Restoration Act of 1993 ("RFRA"), codified at 42 U.S.C. § 2000bb *et seq.*, and the First Amendment. "In general, appellate courts do not consider issues that were not raised before the trial court," though this is a rule of prudence, not an absolute bar. *Sunbeam Products, Inc. v. Wing Shing Products*, 311 B.R. 378 (S.D.N.Y.2004) (citing *Baker v. Dorfman*, 239 F.3d 415 (2d Cir.2000)). Even upon consideration, neither of these arguments has merit.

Lozada argues that RFRA limits the function of 11 U.S.C. § 523(a)(8). As a threshold matter, the Second Circuit has held that RFRA applies to actions between private parties where the statute at issue could be enforced by a government agency. *Hankins v. Lyght*, 441 F.3d 96, 103 (2d Cir. 2006). A subsequent Second Circuit panel has cast doubt on this conclusion. *Rweyemamu v. Cote*, 520 F.3d 198, 203 n.2 (2d Cir. 2008); *see also Listecki v. Official Comm. of Unsecured Creditors*, 780 F.3d 731, 736 (7th Cir. 2015). Nevertheless, RFRA does not govern the result here. *See In re McLeroy*, 250 B.R. at 882; *see also In re McCormack*, No. ADV. 99-80401-W, 2000 WL 33710278, at *5 (Bankr. D.S.C. July 3, 2000). Lozada's reading of the application of RFRA is also inconsistent with Congress' subsequent legislation of the RLCDPA.

Nor does this section of the Bankruptcy Code violate the Constitution. The bankruptcy court, while noting that Lozada did not argue that § 523(a)(8) was unconstitutional as applied, cited to a bankruptcy court case concluding that § 523(a)(8) is a neutral law and not designed to promote or restrict religious beliefs. *In re Lynn*, 168 B.R. 693, 700 (Bankr. D. Ariz.

1994) (citing *Employment Division, Department of Human Resource v. Smith*, 494 U.S. 872 (1990)). It did not err in its analysis.

As a result, the bankruptcy court did not err in considering the reasonableness of Lozada's charitable and religious expenditures. Nevertheless, this determination was not necessary to its ultimate determination: even if allowing for a 10 percent contribution, Lozada fails to satisfy his required showing across the three *Brunner* factors.

### E. Application of the Brunner Factors

#### 1. Minimal Standard of Living

Under the first prong of the *Brunner* analysis, the debtor must show that he "cannot maintain, based on current income and expenses, a 'minimal' standard of living for [himself] if forced to repay the loans." *Brunner* F.2d at 396.

"Well established caselaw makes it clear that total household income, including that of a nondebtor spouse . . . must be considered in conducting this minimal standard of living analysis, as well as its relevance in generally determining undue hardship under the Bankruptcy Code." *In re Davis*, 373 B.R. 241, 248 (W.D.N.Y. 2007) (collecting cases); *see also In re Pobiner*, 309 B.R. 405, 416 (Bankr. E.D.N.Y. 2004) ("[I]ncome of the Plaintiff's non-debtor spouse is properly considered in determining whether requiring repayment of the student loans would create an undue hardship."). Accordingly, the bankruptcy court properly considered Lozada's income and expenses at the household level.

The bankruptcy court correctly found that Lozada "enjoys a healthy monthly surplus." Notably, this determination would not change even if the Bankruptcy court had taken into account Lozada's tithing. With a household net income of at least $5,942 per month and

13

monthly expenses (excluding tithing) of $4,499 per month, Lozada has a surplus of $1,443, sufficient to accommodate both a ten percent contribution of $600 and monthly payment of $826.15 under the Income Contingent Repayment Option of the Ford Program. Unlike Lozada's practice of tithing, there is no indication in the record that Lozada has an extended personal practice or belief consistent with *exceeding* a 10 percent contribution. The practical consequence of these expenses is that the requirement to participate in an income-based repayment program with a payment of $826.15 per month would not impose an undue hardship.

The bankruptcy court's finding that other of Lozada's expenses, including housing and food, were excessive, further confirms this conclusion. Lozada's citations to housing and food cost data does not call into question the bankruptcy court's application of "common sense knowledge gained from ordinary observations." *In re Douglas*, 366 B.R. 241, 253 (Bankr. M.D. Ga. 2007). The bankruptcy court also did not clearly err by adopting the expense figures derived from Lozada's testimony, rather than those listed in various schedules.

Accordingly, I conclude that the bankruptcy court did not err in finding that Lozada did not meet the requirements for the first *Brunner* prong.

2. Persistence of Current Financial Condition and Additional Circumstances

The second prong of the *Brunner* test requires a debtor to show that "additional circumstances exist indicating that [the debtor's present economic distress] is likely to persist for a significant portion of the repayment period" for the student loans, and that the inability to pay is because of factors beyond the debtor's control. *In re Crawley*, 460 B.R. 421, 438 (Bankr. E.D. Pa. 2011). This prong is divided into two elements: first, whether the difficulties are likely to continue, and second, whether the hardship will extend for a significant period.

"Under this factor, debtors must demonstrate 'unique or exceptional circumstances in their current situations that would clearly limit their future abilities to earn a living, support themselves, and repay their loans.'" *In re Jackson*, No. 05-15085 (PCB), 2007 WL 2295585, at *6 (Bankr. S.D.N.Y. Aug. 9, 2007) (quoting *In re King*, 2007 WL 1404380, at *9 (Bankr. D. Vt. May 11, 2007)).

The bankruptcy court generally credited Lozada's testimony about his various health conditions, but it recognized that, absent competent medical or expert evidence, it could not conclude that Lozada is incapable of work. The bankruptcy court correctly concluded that Lozada's testimony alone was insufficient to create a record demonstrating limited physical and employment prognosis. In light of Lozada's high level of education, computer literacy, and ability to drive, the bankruptcy court determined that he is capable of some form of sedentary employment, a position which Lozada admitted in his trial testimony. The bankruptcy court did not clearly err in this finding.

Similarly, Lozada presented no evidence beyond his own testimony on his wife's care requirements, their potential cost, or their occupational impact on his earnings. The burden is on the debtor seeking hardship discharge, and in the absence of a record, it is inappropriate for the Court to make an inference from the possible effects of familial care. Without any competent testimony on the issue, it is impossible to draw any further inference from Lozada's suggestion that his physical ailments and employment prospects will further diminish with age. Lozada's invocation of his wife's religious beliefs is unresponsive to his required showing under this second prong for the same reasons.

Importantly, the bankruptcy court's factual findings on Lozada's income and expenses are sufficient for its conclusions as to this prong. Its factual determination on his

15

employment prospects was not necessary to its conclusion, and, in any case, did not constitute clear error. To the extent that the bankruptcy court found that, even on his fixed household income, Lozada enjoys a "sizable monthly surplus," his prospects for making the income-based payments prescribed by the Ford Program are positive, and he is unable to show that economic distress is likely to persist for a significant period of time.

I conclude that the bankruptcy court did not err in determining that Lozada failed to satisfy the second *Brunner* prong.

### 3. Good Faith Effort to Repay Loans

The third Brunner factor requires a showing "that the debtor has made good faith efforts to repay the loans." *Brunner* 831 F.2d at 396. "This prong of the analysis recognizes that undue hardship 'encompasses a notion that the debtor may not willfully or negligently cause his own default, but rather his condition must result from factors beyond his reasonable control.'" *In re Pobiner*, 309 B.R. 405, 420 (Bankr. E.D.N.Y. 2004) (internal quotation marks omitted) (quoting *In re Elmore,* 230 B.R. 22, 27 (Bankr. D. Conn.1999)).

While the bankruptcy court credited Lozada's earlier payments in the 1990s, it recognized that, by failing to pursue law related employment and to work in social services, Lozada limited his income. Similarly, the bankruptcy court concluded that Lozada, by failing for more than three years to search for work, had not sought to maximize his income.

While the bankruptcy court did not consider Lozada's failure to enter into an income-based repayment program to be per se evidence of a lack of good faith, it considered it in the context of other relevant circumstances. The bankruptcy court did not err in concluding that

the potential downstream tax consequences of entering a loan forgiveness program were not relevant to its present analysis.

The bankruptcy court also weighed Lozada's failure to apply any of his $30,000 inheritance or the $16,174 that he and his wife received in tax refunds towards his student loans. Leaving aside Lozada's tithing, his excess charitable contributions, reaching 35 percent of his household income, coupled with a failure to consider contributing to his student loans, undermines any inference of good faith.

Accordingly, I conclude that the bankruptcy court did not err in applying the third *Brunner* factor. Because I conclude that the bankruptcy court did not err in finding that Lozada did not satisfy his showing of an undue burden, it did not err in denying him a partial discharge. *In re Cox*, 338 F.3d at 1243 ("The bankruptcy court's equitable powers, however, do not allow it to override the specific statutory language found in § 523(a)(8).").

## Conclusion

For the reasons stated, the order of the bankruptcy court is affirmed. Oral argument previously scheduled for June 13, 2019 is unnecessary and is cancelled. The clerk is instructed to enter judgment for appellee and close the case.

SO ORDERED.

Dated: June /, 2019
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

17